UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KEITH W. SIMPSON,

Plaintiff,

v.

CHERYL R. HVASS, Commissioner of Corrections, DAVID CRIST, Warden, TIM LANZ, Unit Director, BRAD HUGHES, Lieutenant, DALE KANON, Sergeant, JENNY DUNN, Correctional Officer, D. VALENTINE, Correctional Officer, and John Does, Unknown,

Defendants.

Civil No. 01-707 (PAM/JGL)

**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner at the Minnesota Correctional Facility, Stillwater, Minnesota, ("MCF-STW"), commenced this action on April 25, 2001, by filing a self-styled pleading entitled "Civil Rights Complaint Pursuant To 42 U.S.C. § 1983." (Docket No. 1.) The matter has been assigned to the undersigned magistrate judge for preliminary review of Plaintiff's pleading pursuant to 28 U.S.C. § 1915A(a), and for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons discussed below, the Court finds that Plaintiff has failed to state any federal claim on which relief can be granted. It will therefore be recommended that the action be dismissed pursuant to 28 U.S.C. § 1915A(b).

## I. BACKGROUND

In July 1999, Plaintiff enrolled in a prison education program known as the "V-T Carpentry Program." He participated in that program on a fairly regular and consistent

MAY 0 - 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

basis for approximately 21 months, although his participation was frequently interrupted during various terms of segregated detention or confinement to his cell. On September 26, 2000, Defendant Kanon allegedly caused Plaintiff to be locked up in his cell for approximately 24 hours. On March 18, 2001, Defendant Dunn also allegedly caused Plaintiff to be locked up in his cell for approximately 24 hours. After both of those incidents -- and after several other similar incidents as well -- Plaintiff wrote to Defendant Hvass, the Minnesota Commissioner of Corrections, to complain about his restricted confinement.

A few days after he had been confined to his cell by Defendant Dunn, Plaintiff was summoned to a meeting with Defendants Lanz and Hughes – two other prison officials at MCF-STW. Plaintiff alleges that during the meeting, "[h]e was threaten[ed] on several occasions that, Quote, 'If anything happen[s] to defendant Dunn that he [presumably meaning Plaintiff] was responsible.'" (Complaint, p. 4, ¶ 33.) The following day, Plaintiff's cell was searched. Contraband was found in his cell, and Plaintiff was given a "segregation sentence" of 15 to 30 days.

Plaintiff was released from segregated confinement on April 6, 2001, and it appears that as of April 16, 2001, (the date when he signed his present complaint), he had not returned to the V-T Carpentry Program. The complaint provides no explanation for Plaintiff's failure to return to the Program. It can reasonably be inferred that someone at MCF-STW has prohibited Plaintiff from returning to the Program, but the complaint does not indicate who is banning him, or why he has been denied re-admission. Plaintiff has written at least two notes to Defendant Crist, the Warden at MCF-STW, asking about his suspension from the Program; but there is no indication that Crist has responded to (or

even received) those messages.

At some point after being released from his latest stint in segregated confinement, Plaintiff began to be detained in his cell "approximately 23 hours a day, and seven days a week." (Complaint, p. 7, ¶ 53.) The complaint does not explain why he is being confined to his cell, who is causing him to be so confined, or how long such confinement is expected to last.

Plaintiff's complaint also includes an anomalous allegation that on April 10, 2001, Defendant D. Valentine, (another MCF-STW correctional officer), charged $5 to Plaintiff's "spending account" without Plaintiff's knowledge or consent. (Complaint, p. 6, ¶s 46-47.)

Based on these factual allegations, Plaintiff claims that Defendants have violated his constitutional rights to due process, equal protection and "fundamental fairness." He also claims that Defendants have violated the Eighth Amendment's prohibition against cruel and unusual punishment. He further claims that he has been denied certain rights guaranteed to prisoners under state statutes, administrative regulations, and prison policies. He is seeking money damages, as well as various forms of injunctive and declaratory relief.

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from state employees, his pleading must be screened in accordance with the procedures prescribed by 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every prisoner civil action brought against government employees "before docketing, if feasible or, in any event, as

soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. To the extent that the pleading, on its face, fails to state a cognizable claim, it must be dismissed. 28 U.S.C. § 1915A(b)(1). In this case, the Court finds that Plaintiff has not pleaded any cause of action on which relief can be granted against any of the named Defendants.

Although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). See also, Martin v. Sargent, 780 F.2d 1334, 1337 (1985) ("[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions"). In a federal civil rights action, moreover, liability occurs only when there is "a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); Speed v. Ramsey County, 954 F.Supp. 1392, 1397 (D.Minn. 1997) (Tunheim, J.) (same). Thus, in order to state a cognizable civil rights claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights.

In this case, Plaintiff's pleading is defective for the simple reason that it does allege sufficient facts, which if proven true, would support the legal conclusion that any named Defendant violated Plaintiff's constitutional or other federally-protected rights. For the reasons discussed below, the Court finds that the facts alleged in the complaint will not support a viable civil rights claim against any of the named Defendants.

A. Claims Against Defendants Hvass And Crist

In support of his claims against Defendants Hvass and Crist, Plaintiff alleges only that he wrote to them and complained about his various stints of special confinement, and about his exclusion from the V-T Carpentry Program. There is nothing in the complaint, however, which suggests that either Hvass or Crist caused, authorized, or sanctioned, any of the actions giving rise to Plaintiff's present lawsuit. Indeed, the complaint does not suggest that either Hvass or Crist, personally, did anything, (or failed to do anything), that could be viewed as a violation of Plaintiff's constitutional rights. Instead, it appears that Hvass and Crist are being sued simply because they are (presumably) the supervisors of those prison officials who actually did cause Plaintiff to be confined to his cell (or placed in segregated confinement), or actually did interrupt his participation in the V-T Carpentry Program.

It is well-settled, however, that supervisory prison officials cannot be held vicariously liable for the alleged misconduct of their subordinates in a civil rights action. The doctrine of respondeat superior simply does not apply to § 1983 claims, such as those that Plaintiff is attempting to bring here. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). Therefore, neither Hvass nor Crist can be held liable for the acts or omissions of other correctional officers employed at MCF-STW.

The Court further notes that even if Hvass and/or Crist were personally responsible for the incidents giving rise to Plaintiff's current lawsuit, he still would not have a legally cognizable civil rights claim against them. Plaintiff seems to believe that he has a constitutionally-protected right to remain in the general prison population, and to

participate in prison rehabilitation programs. However, that simply is not so. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (prisoners have no freestanding constitutional right to remain in the general prison population; their constitutional rights are implicated only when they are forced to endure some "atypical and significant hardship... in relation to the ordinary incidents of prison life," which does not include limited periods of highly restricted confinement); Stewart v. Davies, 954 F.2d 515, 516 (8th Cir. 1992) (prisoners have no constitutionally protected interest in participating in prison rehabilitation programs). For this additional reason, the Court finds that Plaintiff has failed to plead an actionable claim against Hvass or Crist.

B. Claims Against Defendants Lanz And Hughes

The complaint refers to Defendants Lanz and Hughes only at paragraph 33. There, Plaintiff alleges that he was "threaten[ed]" by Lanz and Hughes on several occasions. The complaint does not suggest that Lanz or Hughes actually followed up on their alleged threats in any way.

While verbal threats and harassment against prisoners may be inappropriate and unprofessional, such conduct, will not, by itself, support a civil rights claim. Martin v. Sargent, 780 F.2d at 1338 (abusive language and/or verbal harassment, is not, by itself, unconstitutional, and will not support a § 1983 cause of action); Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (same). Therefore, Plaintiff has no actionable civil rights claim against Lanz or Hughes.[1]

---

[1] Furthermore, there is no indication that Defendants' alleged threats caused Plaintiff anything other than some mental or emotional distress. Because he has not described any accompanying physical injury, Plaintiff's "threat claim" against Lanz and

C. Claims Against Defendants Kanon and Dunn

Plaintiff alleges that Defendants Kanon and Dunn, on separate occasions, each caused Plaintiff to be "locked up in his cell for approximately 24 hours without any form of due process." Plaintiff's claims against these two Defendants are non-viable, because they are based on the false assumption that individual prisoners cannot be singled out and placed in a more restrictive form of confinement, without being afforded due process.

As noted above, prisoners do not have any protected interest in remaining in the general prison population. In Sandin v. Conner, the Supreme Court held that prisoners' due process rights are implicated only when they are forced to endure some "atypical and significant hardship... in relation to the ordinary incidents of prison life." 515 U.S. at 484. Being placed in segregated confinement, or being detained in one's cell, for a limited period of time is a fully expectable aspect of prison life. Such occurrences do not constitute an "atypical and significant hardship" that can give rise to a due process claim.

In the instant case, Plaintiff has alleged that Defendants Kanon and Dunn caused him to be locked up in his cell for just two 24-hour periods. That clearly is not long enough to raise any due process concerns. Sandin itself shows that a 30-day term of segregated confinement does not normally constitute the type of "atypical and significant hardship" that can provide the basis for a due process claim. Our own Court of Appeals has found that 10 days of disciplinary detention followed by 90 days in a maximum security cell is not a hardship of constitutional magnitude. Wycoff v. Nichols, 94 F.3d 1187, 1189-90 (8th Cir.

---

Hughes is barred by 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner... for mental or emotional injury suffered while in custody without a prior showing of physical injury."

1996).[2] Case law from other jurisdictions suggests that even much longer periods of segregated confinement will not support a due process claim. See Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of hardship that would support a due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners"). Based on Sandin and the relevant case law following it, the Court finds that Defendants Kanon and Dunn did not violate Plaintiff's constitutional rights by causing him to be locked in his cell for 24 hours at a time without due process.

D. Claim Against Defendant Valentine

Finally, Plaintiff alleges that Defendant Valentine charged $5 to his "spending account" without his permission. Plaintiff has not explained his legal theory for suing Valentine, but it appears that he might be relying on a conversion theory, (even though there is no suggestion that Valentine actually converted any of Plaintiff's property for his own use or benefit). Such a claim, however, would be grounded on state common law, (i.e., the common law tort of conversion), and could not be entertained (by itself) in federal

---

[2] See also Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (unpublished opinion) (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (unpublished opinion) (135 days in disciplinary and administrative segregation would not support due process claim).

court.

If Plaintiff is attempting to bring a due process claim against Valentine, (i.e., a claim that Valentine deprived him of his property without due process), his claim is barred by Hudson v. Palmer, 468 U.S. 517, 533 (1984). In Hudson, the Court held that the "unauthorized intentional deprivation" of a prisoner's property by a prison official "does not constitute a violation of the procedural requirements of the Due Process Clause... if a meaningful post-deprivation remedy for the loss is available." In the present case, Plaintiff has failed to allege that there were no administrative or state court post-deprivation remedies available to him, by which he could have sought redress for the alleged seizure of his property. Therefore, his complaint fails to state an actionable due process claim against Defendant Valentine.

## III. CONCLUSION

The Court concludes that the facts alleged in Plaintiff's complaint will not support any federal civil rights cause of action against any of the named Defendants. It will therefore be recommended that this action be summarily dismissed, in its entirety, pursuant to 28 U.S.C. § 1915A(b)(1).[3]

---

[3] Plaintiff apparently is seeking to have the federal court exercise supplemental jurisdiction over certain claims purportedly based on state law, pursuant to 28 U.S.C. § 1367. However, under § 1367(c)(3), federal courts may decline to exercise supplemental jurisdiction over state law claims when the court has "dismissed all claims over which it has original jurisdiction." This clause of the supplemental jurisdiction statute is directly applicable here, as it has already been determined that all of Plaintiff's attempted federal claims must be dismissed. Moreover, "when federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims." Stokes v. Lokken, 644 F.2d 779, 785 (8th Cir. 1981); see also, Save Our Health Organization v. Recomp of Minnesota, 829 F.Supp. 288, 293 (D.Minn. 1993), aff'd, 37 F.3d 1334 (8th Cir. 1994).

The instant case has not progressed beyond the filing of the complaint, so the

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

Dated: May 3, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by May 22, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

interests of "judicial efficiency, convenience, and fairness to the litigants" will not be compromised by the Court's refusal to entertain Plaintiff's state law claims. Condor Corp. v. City of St. Paul, 912 F.2d 215, 221 (8th Cir. 1990). Furthermore, this Court would not be the most suitable forum for adjudicating Plaintiff's state law claims. Id. at 220 (stressing "the need to exercise judicial restraint and avoid state law issues wherever possible"). Therefore, it would not be appropriate to exercise supplemental jurisdiction over Plaintiff's current state law claims. Those claims will be dismissed without prejudice, leaving Plaintiff free to pursue them in the state courts, if he chooses. See, Stokes v. Lokken, 644 F.2d at 785.

This is not meant to suggest that Plaintiff has actually pleaded a cognizable state law claim. To the contrary, the complaint includes nothing more than conclusory allegations that the Defendants violated Plaintiff's rights under Minnesota law. It seems doubtful that a Minnesota state court would find an actionable claim against any of the Defendants in Plaintiff's current complaint.